IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| RICHARD ANDREW NELSON, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 5:19-CV-352 (MTT) |
| WAL-MART STORES EAST, LP, *et al.*, | ) |
| Defendants. | ) |

**ORDER**

Plaintiff Richard Nelson alleges claims against Walmart Stores East, LP and John Doe ("Walmart") for injuries arising from a slip and fall on Walmart's premises. Doc. 1-3. Walmart now moves for summary judgment. Because fact issues remain, Walmart's motion (Doc. 21) is **DENIED**.

**I. BACKGROUND[1]**

On the evening of August 3, 2017, Nelson went shopping at the Walmart in Thomaston, Georgia for various "odds and ends." Docs. 21-2 ¶ 1; 25-1 ¶ 1. It had rained during the hour preceding the incident, but it was not raining when Nelson entered the store. Docs. 25-2 ¶ 7; 29-1 ¶ 7. After entering the store by the grocery-side vestibule, Nelson slipped and fell on water. Docs. 25-2 ¶ 4; 29-1 ¶ 4. Walmart's video surveillance system recorded the incident and shows Nelson falling in an area directly under a "Wonder Woman" sign. *See* video at 7:25:15-7:25:25. Walmart had not

---

[1] Unless otherwise stated, the facts are undisputed and are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

implemented its inclement weather protocols on the date of the incident, but a mat at the grocery-side entrance can be seen in the surveillance footage.  Docs. 25-2 ¶ 6; 29-1 ¶ 6.  At his deposition, Nelson testified that he did not see the water that caused him to slip until after he fell and that he did not know where the water came from or how long it had been there.  Doc. 21-3 at 66:23-68:24.  But the water did not look like it had been tracked in, and Nelson described it as "invisible from a standing position" and "about the size of a dinner plate."  *Id.* at 70:3-10; 66:23-67:13.  Following the fall, Nelson's wife observed water on the floor.[2]  Docs. 25-2 ¶ 11; 29-1 ¶ 11.

Walmart Maintenance Associate Jesse Coon was working the day of Nelson's fall.  Doc. 21-6 at 12:4-25.  Coon's duties included conducting safety sweeps to make sure there was no trash, garbage, or other hazards on the floor.  *Id.* at 41:5-13.  Coon testified that he inspected the specific area where Nelson fell approximately fourteen minutes prior to the incident and there was no water present.  *Id.* at 14:1-3, 41:14-15, 41:24-42:2.  When Coon returned to the area after Nelson's fall, he testified there was water present, which he cleaned up, and speculated it came from Nelson's "flip-flops."  *Id.* at 42:8-18.

Coon can first be seen on Walmart's surveillance video from timestamp 7:11:50 to 7:11:55.  *Id.* at 41:24-42:5.  And while the video shows Coon walking through the area to the right of the "Wonder Woman" sign where Nelson fell, he did not walk underneath the sign.  Video at 7:11:50-7:11:55; Doc. 21-6 at 43:1-13.  Moreover, Coon conceded during his deposition that the video only shows him looking down at his

---

[2] Both parties also agree there was a Walmart employee approximately twenty-five feet from where Nelson fell prior to his actual fall, although whether she was looking in that area is disputed.  Docs. 25-2 ¶ 5; 29-1 ¶ 5.  Nelson could not recall seeing any other employees before he fell, but he did testify he observed the same female associate five to ten feet away from him immediately after his fall.  *Id.*

broom handle, even though he went on to contend he looked to the left where Nelson's fall occurred fourteen minutes later.  Doc. 21-6 at 25:12-17.

There is no evidence Walmart had actual knowledge of the water hazard.  Docs. 21-2 ¶ 31; 25-1 ¶ 31.  Walmart argues it is entitled to summary judgment because Nelson has no evidence of Walmart's constructive knowledge of the hazard.  Doc. 21-1 at 8-9.  Specifically, Walmart claims the undisputed facts prove (1) no Walmart associate was in the area immediately before or at the time of the incident and had the opportunity to see and remove the water on the floor; and (2) Coon's inspection of the area fourteen minutes prior to Nelson's fall was reasonable as matter of law.  *Id.* at 9.

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material

*negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (alterations in original) (quoting *Celotex*, 477 U.S. at 324).  Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2).  However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge …. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

#### A. Applicable Georgia Law

"Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages

to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." O.C.G.A. § 51-3-1. In order to prevail on a claim for negligence in a slip and fall case in Georgia, the plaintiff "must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *Robinson v. Kroger Co.*, 268 Ga. 735, 748, 493 S.E.2d 403, 414 (1997).

Here, it is undisputed that Walmart had no actual knowledge there was any substance on the floor that could injure Nelson. Docs. 21-2 ¶ 31; 25-1 ¶ 31. As to Nelson's knowledge of the hazard, Walmart does not argue, at this point, that Nelson failed to exercise ordinary care. *See generally* Docs. 21-1; 29. Thus, the key question is whether there is evidence from which a jury could find that Walmart had constructive knowledge of the hazard. In other words, the question is whether Walmart should have known about the substance on the floor but did not due to a failure to inspect and take reasonable precautions.

Constructive knowledge in a slip and fall case may be demonstrated by either (1) "showing that a store employee was present in the immediate area and could easily have seen the substance and removed it, or (2) by showing that the substance had been on the floor for such a time that it would have been discovered and removed had the proprietor exercised reasonable care in inspecting the premises." *Wallace v. Wal-Mart Stores, Inc.*, 272 Ga. App. 343, 345, 612 S.E.2d 528, 530 (2005). As to the first method, the mere presence of an employee in the vicinity of the hazard is insufficient, rather, the employee must have been able to easily see the substance and remove it.

*Mucyo v. Publix Super Markets, Inc.*, 301 Ga. App. 599, 601, 688 S.E.2d 372, 374 (2009) ("Because there is no evidence the purported hazard was readily visible to [plaintiff] or others who were in her immediate vicinity at the time she fell, [plaintiff] did not establish that the cashier could easily have seen and removed the hazard.").

With regard to the second, Georgia courts have long held that the presence of a substance fifteen minutes or less is not considered sufficient time to give rise to constructive knowledge of the substance. *All Am. Quality Foods, Inc. v. Smith*, 340 Ga. App. 393, 395-96, 797 S.E.2d 259, 261-62 (2017) (citing cases). But as Walmart concedes in its brief, ["t]o withstand a motion for summary judgment, the plaintiff need not show how long the hazard had been present unless the owner has first demonstrated its inspection procedures." *Walmart Stores E. L. P. v. Benson*, 343 Ga. App. 74, 77, 806 S.E.2d 25, 28 (2017) (citations and quotations omitted). Thus, to avoid any inference of constructive knowledge, Walmart "must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident." *Brown v. Host/Taco Joint Venture*, 305 Ga. App. 248, 251, 699 S.E.2d 439, 443 (2010) (citations omitted).

The reasonableness of an inspection program turns on the type of business and the specific area where the hazard was discovered. *See Williams v. GK Mahavir, Inc.*, 314 Ga. App. 758, 761, 726 S.E.2d 71, 75 (2012). In other words, whether an inspection program is reasonable is a case-specific inquiry that generally depends "on the nature of the business, the size of the store, the number of customers, the nature of the dangerous condition, and the store's location." *Crook v. Racetrac Petroleum*, 257 Ga. App. 179, 181, 570 S.E.2d 584, 586 (2002). Of course, having an inspection

program means nothing if the inspection is not conducted in a reasonable manner.  *See Gilbert v. Auto. Purchasing Serv.*, 254 Ga. App. 770, 772, 563 S.E.2d 906, 909 (2002) ("[I]t is for a jury to determine whether the [defendant's] employee conducted a cursory and inadequate inspection which failed to disclose the substance upon which [plaintiff] slipped and whether the substance was discoverable upon a reasonable inspection.").

**B. The Adequacy of Walmart's Inspection is a Jury Issue**

Walmart makes two main arguments: (1) no Walmart associate was in the area immediately before or at the time of the incident and had the opportunity to see and remove the water on the floor and (2) Coon's inspection of the area fourteen minutes prior to Nelson's fall was reasonable as matter of law.  Doc. 21-1 at 9.  The burden then shifted to Nelson to set forth specific evidence that a genuine dispute remained as to Walmart's knowledge of the hazard.  *See Celotex Corp.*, 477 U.S. at 324.

The first is easily dispensed with.  Nelson himself testified that the water was "invisible from a standing position."  Doc. 21-3 at 70:3-10.  Similarly, perhaps because the water had not been tracked in, the presence of water cannot be seen in the video surveillance footage.  But what the video does show is Coon cleaning an area of the floor after Nelson's fall (video 7:28:15-7:28:30), and Coon himself testified that the substance he was removing from the floor was water.  Doc. 21-6 at 42:8-18.  In any event, the lack of discernible water on the video surveillance footage coupled with Coon's testimony that water was in fact there, at least after Nelson had fallen, shows that the water was indeed difficult to see.  Because there is no evidence the water was readily visible to Nelson, there is nothing to suggest Walmart associates who were in the immediate vicinity should have seen the water when Nelson himself could not.

-7-

Accordingly, Nelson cannot establish constructive knowledge in this manner. *Mucyo*, 301 Ga. App. at 601, 688 S.E.2d at 374.

But a reasonable jury could find that Coon's inspection of the area was inadequate, and thus, Walmart had constructive knowledge of the hazard. Walmart argues its inspection, which was allegedly conducted by Coon fourteen minutes prior to Nelson's fall, was reasonable as a matter of law. Doc. 21-1 at 9-11. And that may be true if it was undisputed that an adequate inspection occurred. *See All Am. Quality Foods, Inc.*, 340 Ga. App. at 395-96, 797 S.E.2d at 261-62. However, that is not the case here. On the one hand, Coon testified during his deposition that he inspected the specific area where Nelson fell approximately fourteen minutes prior to the incident and there was no water present. Doc. 21-6 at 14:1-3; 41:14-15; 41:24-42:2. On the other, the video "does not show him walking through the 'precise area' where [Nelson] fell, looking at the ground in that direction, or performing any kind of inspection at all." Doc. 25 (citing video at 7:11:50). Coupled with the fact that Nelson's fall occurred near an entryway, and it had rained earlier that day, a jury must decide whether Coon's inspection—if one occurred at all— was adequate in light of the foregoing circumstances. *See Gilbert*, 254 Ga. App. at 772, 563 S.E.2d at 909.

### III. CONCLUSION

For the reasons discussed above, Walmart's motion for summary judgment (Doc. 21) is **DENIED**.

**SO ORDERED**, this 18th day of November, 2021.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, CHIEF JUDGE<br>
UNITED STATES DISTRICT COURT